[Cite as *State ex rel. Northern v. Indus. Comm.*, 2021-Ohio-1940.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Stephen L. Northern :
C/O Natalie Northern, Child et al.,
:
      Relators,
:
v. : No. 20AP-63
:
Industrial Commission of Ohio et al., : (REGULAR CALENDAR)
:
      Respondents.
:

---

D E C I S I O N

Rendered on June 8, 2021

---

**On brief:** *Hochman & Plunkett Co., L.P.A., Gary D. Plunkett,* and *Marcus A. Heath,* for relators.

**On brief:** *Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

**On brief:** *Dinsmore & Shohl LLP, Brian P. Perry,* and *Christen S. Hignett,* for respondent OneSource Employee Management, Avitor Holdings.

---

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relators, Stephen L. Northern ("decedent") c/o Natalie Northern, child, and Nathan Northern, child ("claimants"), initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting the motion of respondent, OneSource

Employee Management/Avitor Holdings ("OneSource"), to exercise continuing jurisdiction and deny claimants' death application.

{¶ 2}   This court referred the matter to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate rendered a decision that includes findings of fact and conclusions of law.  The magistrate's decision, which is appended hereto, recommends this court deny relators' request for a writ of mandamus.

{¶ 3}   Relators have filed an objection to the magistrate's decision.  Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d). Through their objection, relators assert the magistrate erroneously conducted a de novo review of the facts in order to determine the commission properly exercised continuing jurisdiction.

{¶ 4}   The commission's power to reconsider a previous decision derives from its general grant of continuing jurisdiction under R.C. 4123.52.  *State ex rel. Royal v. Indus. Comm.*, 95 Ohio St.3d 97, 99 (2002).  The commission may exercise continuing jurisdiction when one of the following prerequisites is present: "(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal." *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14. Here, the commission identified new and changed circumstances as the basis for its continuing jurisdiction.  As the magistrate noted, the new and changed circumstances required to support the commission's exercise of continuing jurisdiction must occur subsequent to the date of the order from which reconsideration is sought and could not, with the exercise of due diligence, have been discovered prior to the date of the order from which reconsideration is sought.  Industrial Commission Resolution R18-1-06(D)(1)(a).

{¶ 5}   Relators' argument before the magistrate and again through their objection is that the commission based its order on facts that had no support in the record. Specifically, relators assert that the commission denied the death claim based on an erroneous date of certification of the original claim.  While the staff hearing officer ("SHO") who heard claimants' appeal erroneously found that OneSource certified the claim on October 18, 2018, the evidence before the SHO demonstrated that the claim was certified on either November 6 or November 8, 2018.  The magistrate fully explained the SHO's error

in his decision. Despite the magistrate's explanation of the SHO's use of the wrong date of certification, relators assert the magistrate erred in proceeding to review the commission's exercise of continuing jurisdiction after having recognized the SHO stated the wrong date of certification.

{¶ 6} Relators argue the magistrate should not, in the first instance, determine whether there were new and changed circumstances sufficient to support an exercise of continuing jurisdiction once the magistrate accounted for the correct date of certification. However, relator's argument mischaracterizes the magistrate's decision. The magistrate did not conduct a de novo review of the facts and then make his own determination of whether the commission could exercise its continuing jurisdiction. Rather, the magistrate's decision explained that the SHO's use of the wrong date of certification was of no consequence to the SHO's more relevant determination that OneSource exercised due diligence to obtain all relevant information concerning the incident prior to certification. As the magistrate explained, the SHO found that even though the toxicology report indicating decedent's cocaine and marijuana intoxication was completed on November 6, 2018, the toxicology report was not readily available to OneSource, or to anyone else, until it was attached as part of the coroner's December 11, 2018 report. Thus, a certification date of October 18, November 6, or November 8, 2018, would not impact the SHO's finding that OneSource exercised due diligence in obtaining all relevant medical information concerning the incident prior to certifying benefits as all of those dates are prior to December 11, 2018.

{¶ 7} Accordingly, we disagree with relators' attempt to characterize the magistrate's decision as an improper de novo review of the facts. Although relators continue to argue generally that OneSource should have done more to learn of the pending toxicology results, this is a challenge to the commission's finding that OneSource failed to exercise due diligence prior to certification. As the magistrate explained, there is nothing in the record suggesting what more OneSource could have done to learn of the pending toxicology results prior to the December 11, 2018 coroner's report. The SHO's mistake of fact on the actual date of certification was not outcome determinative as it did not affect the central determination of whether OneSource exercised due diligence. *See, e.g., State ex rel. Little v. Indus. Comm.*, 10th Dist. No. 11AP-1110, 2013-Ohio-282, ¶ 7 (granting mandamus

relief not appropriate where SHO's factual error is not outcome determinative). Therefore, we agree with the magistrate that the commission did not abuse its discretion in exercising its continuing jurisdiction on the basis of new and changed circumstances, and we overrule relators' objection to the magistrate's decision.

{¶ 8} Following our independent review of the record pursuant to Civ.R. 53, we conclude the magistrate correctly determined that relators are not entitled to the requested writ of mandamus. Accordingly, we adopt the magistrate's decision, including the findings of fact and conclusions of law therein. Having overruled relators' objection to the magistrate's decision, we deny relators' request for a writ of mandamus.

*Objection overruled; writ of mandamus denied.*

BROWN and MENTEL, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Stephen L. Northern<br>C/O Natalie Northern, Child et al., | : | |
| | : | |
| Relators, | | |
| | : | |
| v. | | No.  20AP-63 |
| | : | |
| Industrial Commission of Ohio et al., | | (REGULAR CALENDAR) |
| | : | |
| Respondents. | | |
| | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 17, 2021

*Hochman & Plunkett Co., L.P.A., Gary D. Plunkett,* and *Marcus A. Heath,* for relators.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Dinsmore & Shohl LLP, Brian P. Perry,* and *Christen S. Hignett,* for respondent OneSource Employee Management, Avitor Holdings.

IN MANDAMUS

{¶ 9}   Relators, Stephen L. Northern ("decedent") c/o Natalie Northern, child, and Nathan Northern, child ("claimants"), have filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that granted the motion by respondent, OneSource

Employee Management/Avitor Holdings ("OneSource"), to invoke continuing jurisdiction and denied claimants' death application.

Findings of Fact:

{¶ 10} 1. On October 7, 2018, decedent, during the course of his employment with Apex Express/Cordell Transportation ("Apex"), drove his semi-truck off the side of the road.

{¶ 11} 2. Apex utilized the services of OneSource, a professional employer organization that managed the workers' compensation coverage for Apex. Under such an arrangement, pursuant to the Ohio Revised Code, OneSource is the co-employer for purposes of workers' compensation and is a self-insured employer.

{¶ 12} 3. Decedent was first taken to Lima Memorial Hospital ("Lima Memorial") and then transferred the same day to Miami Valley Hospital ("Miami Valley"). In the Lima Memorial medical records, there is a reference to a urine screen, although there is no reference to cocaine or marijuana being found in the decedent's system. A blood test conducted at Lima Memorial indicates decedent had a blood alcohol level of .006 gm/dL.

{¶ 13} 4. Apex notified OneSource of the accident the day after the accident. Subsequently, OneSource hired a nurse case manager to help coordinate and manage various aspects of the claim.

{¶ 14} 5. On October 11, 2018, OneSource received the treatment notes of Miami Valley. In those records, it was revealed decedent was a heroin user. The records were reviewed by Alison N. Sackenheim, general counsel for OneSource, and Amy Harley, the claims examiner for OneSource.

{¶ 15} 6. On three occasions between October 11 and October 18, 2018, Harley left messages for "Dianne," a billing clerk at Miami Valley, asking whether a drug test had been performed. OneSource also obtained the traffic crash report, which did not reference drugs or alcohol being a factor in the accident.

{¶ 16} 7. On October 15, 2018, decedent passed away as a result of the injuries sustained in the accident.

{¶ 17} 8. On October 16, 2018, the coroner's office performed an autopsy on decedent.

{¶ 18} 9. On October 18, 2018, Dianne called Harley and indicated that she could find nothing in the records to indicate that a drug test was performed on decedent or that there were any pending samples being tested.

{¶ 19} 10. Decedent's funeral was held on October 19, 2018.

{¶ 20} 11. On October 19, 2018, and October 22, 2018, Harley and the payroll manager for Apex exchanged emails, in which Harley informed the payroll manager that Dianne could not see anywhere in the medical records that a drug test was performed, and Harley was going to stop pursuing drug-test results unless the payroll manager discovered something different. The payroll manager replied that Apex has to request a drug test or a hospital will not do one, she speculated that drug testing was a low priority for Lima Memorial and Miami Valley because of the decedent's poor condition, and she was not sure that they would have completed a drug screen on an unconscious person even if Apex had requested one.

{¶ 21} 12. On October 23, 2018, a certificate of death was issued, and on October 29, 2018, a supplementary medical certification was completed. Both indicate the cause of death as complications of blunt force trauma and that the autopsy results were reviewed.

{¶ 22} 13. A toxicology report, signed November 6, 2018, by the chief forensic toxicologist, was completed by the Montgomery County Coroner's Office, and it indicated the presence of cocaine and marijuana in the decedent's system.

{¶ 23} 14. On the same day, November 6, 2018, Harley made the decision to certify the claim, and she informed the Bureau of Workers' Compensation ("BWC") via voicemail of the decision.

{¶ 24} 15. On November 8, 2018, Harley spoke to BWC via telephone and indicated again that OneSource was certifying the claim.

{¶ 25} 16. On November 14, 2018, OneSource started paying death benefits to claimants.

{¶ 26} 17. On December 11, 2018, the coroner released his report, to which the November 6, 2018, toxicology report was attached. The report indicated evidence of cocaine and marijuana intoxication using blood acquired from Lima Memorial and dated

October 7, 2018, at 6:18 p.m. The report listed cocaine and marijuana intoxication as contributing causes of death.

{¶ 27} 18. On January 29, 2019, OneSource received a letter from a life insurance company denying benefits to decedent based upon the toxicology report. This was the first time OneSource became aware of the existence of the toxicology report and coroner's report.

{¶ 28} 19. On February 5, 2019, OneSource ordered the records from the coroner and received them on February 26, 2019.

{¶ 29} 20. On April 5, 2019, OneSource filed a C-86 motion to invoke continuing jurisdiction and deny the death allowance based upon newly discovered evidence. A hearing was scheduled for July 22, 2019.

{¶ 30} 21. On June 18, 2019, counsel for claimants requested from Harley the certification letter sent to the BWC certifying the claim. Harley generated a certification letter dated October 17, 2018, even though she had never actually given the letter to the BWC, and she sent it to claimants' counsel.

{¶ 31} 22. On June 20, 2019, Harley and claimants' counsel participated in an email exchange, in which Harley informed counsel that the BWC and claimants were told verbally on November 8, 2018, that OneSource was certifying the claim, and because BWC did not request a certification letter, she did not send the BWC the certification letter dated October 17, 2018.

{¶ 32} 23. In the July 19, 2019, memorandum in opposition to claimants' motion to dismiss OneSource's motion for continuing jurisdiction filed by Sackenheim, Sackenheim indicated that OneSource certified the death claim around October 18, 2018, relying upon the date indicated on Harley's certification letter.

{¶ 33} 24. At the July 22, 2019, hearing before the district hearing officer ("DHO"), Sackenheim testified that OneSource held onto an October 17, 2018, certification letter until it heard from Miami Valley as to whether there was a drug test, and the letter was not mailed until at least October 18, 2018, after OneSource was informed by Miami Valley that there was no drug test.

{¶ 34} 25. On July 25, 2019, the DHO issued an order, finding the following: (1) R.C. 4123.52 permits the commission to invoke continuing jurisdiction over a self-insuring employer's initial certification of a claim; (2) OneSource presented sufficient evidence of new and changed circumstances by way of newly acquired evidence that was not readily discoverable despite exercising due diligence at the time of the initial certification of the claim by OneSource; (3) the employer certified the claim on October 18, 2018; (4) a November 6, 2018, toxicology report, using blood obtained from Lima Memorial, indicated high levels of cocaine and low levels of marijuana metabolites in decedent's body at the time of death; (5) the December 11, 2018, coroner's report of Bryan D. Casto, M.D., corroborates the toxicology findings; (6) OneSource exercised due diligence in its attempts to obtain all relevant medical information concerning the incident, while also being mindful of the fatal nature of the incident and the pending funeral and procession expenses; (7) the toxicology report and coroner's report were not readily discoverable by OneSource within a reasonable time following the date of incident and constitute new and changed circumstances for purposes of invoking continuing jurisdiction; (8) this newly discovered evidence was not able to be procured at an earlier date, notwithstanding the reasonable efforts and due diligence performed by OneSource to obtain such information; (9) the claimants' death application is denied, based upon a finding that the evidence failed to establish that decedent's death resulted from an injury or occupational disease that was sustained or developed in the course of and arising out of his employment; and (10) the finding is based upon the November 6, 2018, toxicology report; the December 11, 2018, coroner's report; the March 25, 2019, report of Paul T. Hogya, M.D.; and the transcript of the proceedings.

{¶ 35} 26. Claimants appealed the DHO's decision, and the claim was scheduled for a hearing before a staff hearing officer ("SHO") on December 9, 2019.

{¶ 36} 27. On December 6, 2019, Brian Perry, attorney for OneSource, sent claimants' counsel an email, in which he indicated that, as he was preparing for the SHO hearing, he learned for the first time that, although OneSource had verbally informed the BWC that it was accepting the claim in November 2018, Harley's October 17, 2018, certification letter was not actually generated until claimants' counsel requested it in June 2019.

{¶ 37} 28. At the December 9, 2019, SHO hearing, the following pertinent testimony was elicited: (1) Harley testified that the October 17, 2018, certification letter was not sent in October and was printed for the first time in June 2019, when claimants' counsel requested a copy of the written certification letter; (2) Harley testified that she went through the Miami Valley records and saw no drug references or drug tests pending, Dianne at Miami Valley told her that decedent did not undergo any drug testing, the nurse case manager never indicated there was a drug test pending, and she did not actually become aware that there had been a drug test until January 29, 2019, when the insurance company denied the claim based upon the toxicology report; (3) Harley testified that she asked the Montgomery County Coroner's Office for a copy of the toxicology report on February 5, 2019, and she received it on February 26, 2019; (4) Sackenheim testified that when claimants' counsel asked for a copy of the written certification letter, she directed counsel to Harley because she was travelling at the time and the letter was an administrative function; (5) Sackenheim testified that although she stated in her pleadings before the DHO hearing and at the DHO hearing that the claim was certified via the October 17, 2018, letter, the letter was created as an administrative function by Harley, and she was taking the date of the letter at face value; (6) Sackenheim testified that she never before testified as to the date of mailing of the October 17th certification letter at the DHO hearing, as the mailing of the letter would have been an administrative function; (7) Sackenheim testified she did not discuss the case with Harley between the June 2019 request for the letter and the DHO hearing because she had a cancer scare, doctor appointments, and surgery; and (8) Sackenheim testified she was unaware of the actual facts with regard to the certification letter until one week before the SHO hearing.

{¶ 38} 29. In a December 12, 2019, decision, the SHO found the following: (1) OneSource certified the death claim on October 18, 2018; (2) based upon blood evidence secured by Lima Memorial, a toxicology report was undertaken on approximately November 6, 2018; (3) benefits were commenced being paid to the claimants on November 14, 2018; (4) the toxicology report dated November 6, 2018, indicated high levels of cocaine and low levels of marijuana metabolites at levels above the confirmation and cutoff limits; (5) the December 11, 2018, coroner's report corroborates the toxicology findings of the illegal substances being found within the decedent's body at the time of

death; (6) the blood testing was not undertaken at the request of OneSource or by any physician employed by OneSource; (7) the blood testing was a qualifying test; (8) the only records on file and available to OneSource at the time of the claim certification were the hospital records from Lima Memorial and from Miami Valley; these pre-certification records do not reference any blood test or toxicology testing or report; (9) OneSource exercised due diligence in its attempts to obtain all relevant medical information concerning the incident, while also being mindful of the fatal nature of the incident and related expenses; (10) the toxicology report and coroner's report were not readily discoverable by OneSource within a reasonable time following the date of the accident and constitute new and changed circumstances supporting the exercise of continuing jurisdiction; (11) the newly discovered evidence was not able to be procured at an earlier date, notwithstanding the reasonable efforts and due diligence performed by OneSource to obtain such information; (12) the exercise of continuing jurisdiction is appropriate; (13) the death application is denied because the evidence fails to establish that the decedent's death resulted from an injury or occupational disease that was sustained or developed in the course of and arising out of his employment; (14) the decedent's injuries and ultimate death were the result of an intoxication and not sustained or developed in the course of and arising out of his employment; and (15) the findings are based upon the evidence, including the November 6, 2018, toxicology report, the December 11, 2018, coroner's report, and the March 25, 2019, report of Paul T. Hogya, M.D.

{¶ 39} 30. On December 12, 2019, claimants appealed the SHO's decision.

{¶ 40} 31. On December 31, 2019, the commission refused claimants' appeal.

{¶ 41} 32. On February 3, 2020, claimants filed a petition for writ of mandamus.

{¶ 42} 33. On February 4, 2020, claimants filed a corrected petition for writ of mandamus.

{¶ 43} 34. A magistrate of this court was appointed in this case, and on August 10, 2020, the current magistrate was appointed and substituted as magistrate.

Conclusions of Law and Discussion:

{¶ 44} For the reasons that follow, it is the magistrate's decision that this court should not issue a writ of mandamus.

{¶ 45} In order for this court to issue a writ of mandamus, a relator must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 46} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A) contains a clear and broad grant of continuing jurisdiction to the commission. *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, ¶ 15. However, that jurisdiction is conditioned on specific criteria: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998).

{¶ 47} The commission has further explained the new and changed circumstances required to exercise continuing jurisdiction in Industrial Commission Resolution R18-1-06, which provides, in pertinent part:

> New and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought. For example, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the appellant prior to the date of the order from which reconsideration is sought. Newly discovered evidence shall be relevant to the issue in controversy but shall not be merely corroborative of evidence that was submitted prior to the date of the order from which reconsideration is sought.

R18-1-06(D)(1)(a).

{¶ 48} In the present matter, claimants present two main arguments. Claimants first argue that the commission abused its discretion when it granted continuing jurisdiction based upon crucial findings of fact that are erroneous and unsupported by any evidence, asserting the following: (1) there was no evidence to support the finding of the DHO and SHO that OneSource certified the claim on October 18, 2018; (2) attorney Sackenheim's claim that the toxicology report was dated November 6, 2018, which was

three weeks after the certification, was false; (3) Harley's October 17, 2018, certification letter was false and was not actually created until June 2019; (4) neither Sackenheim nor Perry suggested that Sackenheim's testimony at the DHO hearing regarding the October 18, 2018, certification date was based upon anything other than personal knowledge after she and Harley heard from Dianne at Miami Valley that there were no drug tests; (5) at the SHO hearing, Perry and Harley conceded that the claim was certified verbally on November 8, 2018, and there was never any written certification issued; yet, the SHO still found that OneSource certified the claim on October 18, 2018; (6) no party is taking the position that the claim was certified on October 18, 2018; (7) the certification of the claim occurred on November 8, 2018; (8) although OneSource did not actually know about the toxicology report when it certified the claim on November 8, 2018, OneSource could have readily discovered with due diligence about the drug tests at the time of the initial allowance; (9) as of October 7, 2018, there existed records from Lima Memorial that showed blood was drawn and tested but not completed; (10) as of October 23, 2018, there existed a death certificate that revealed the case was being referred to the coroner's office and that an autopsy was completed; and (11) the toxicology report was available on November 6, 2018.

{¶ 49} Claimants also argue that the commission abused its discretion when it granted OneSource continuing jurisdiction to reopen a certified claim, in the absence of fraud and due diligence, based upon the following reasons: (1) the certification of the claim by OneSource occurred on November 8, 2018; (2) the certification date precludes the invocation of continuing jurisdiction because there was evidence in existence before that time that decedent was intoxicated, namely, the coroner's November 6, 2018, toxicology report, the Lima Memorial records, and the fact that decedent's death had been referred to the coroner before November 8, 2018; (3) Sackenheim's legal memorandum filed before the DHO hearing was false in that it stated the toxicology report was dated November 6, 2018, which was three weeks after the certification; (4) OneSource never ordered the Lima Memorial records, which would have alerted OneSource to the fact that blood was drawn and tested at the hospital on the day of the accident; (5) Perry's statement at the DHO hearing was false in that he stated that the toxicology results were dated November 6, 2018, and by that time OneSource had certified the claim;

(6) Sackenheim falsely testified at the DHO hearing that the reason the claim was certified on October 18, 2018, was that OneSource wanted to do the right thing and certify it prior to the funeral; (7) Harley confirmed at the SHO hearing that the certification did not occur until November 8, 2018; (8) OneSource did no due diligence with the Montgomery County Coroner's Office to obtain the toxicology results prior to certification; (9) Sackenheim's memorandum before the DHO hearing was blatantly false, in that she claimed there was nothing to warrant the anticipation of any further pertinent evidence at the time of certification, because on October 23, 2018, it was public record that the cause of death was referred to the coroner's office for an autopsy; and (10) OneSource should have contacted the coroner's office prior to certification.

{¶ 50} Initially, it is clear that the SHO erroneously found that the date of OneSource's certification of the claim was October 18, 2018. The evidence showed that Harley's October 17, 2018, certification letter to the BWC was not actually created until June 2019. At the SHO hearing, neither party contended that the date of certification was October 18, 2018. Furthermore, during Sackenheim's testimony at the SHO hearing, the hearing officer, Perry, Harley, and claimants' counsel engaged in a discussion that suggests the hearing officer was confused about the dates surrounding the creation of the certification letter and when and whether it was ever sent to the BWC, which may be telling as to why the SHO made the erroneous finding that OneSource certified the claim on October 18, 2018.

{¶ 51} Notwithstanding this error, the crux of the matter is whether the commission properly exercised continuing jurisdiction. Claimants initially spend a substantial amount of space in their briefing attempting to portray OneSource's explanation of the sequence of events surrounding the timing of the certification of the claim as fraudulent. However, a review of the evidence credibly supports the respondents' version of the events and fails to convincingly prove any fraudulent intent. Although Sackenheim wrongly indicated in her July 19, 2019, memorandum in opposition that OneSource certified the death claim around October 18, 2018, and she testified wrongly at the July 22, 2019, DHO hearing that OneSource held onto the October 17, 2018, certification letter until releasing it on October 18, 2018, Sackenheim, Perry, and Harley later explained the confusion surrounding the October 17, 2018, letter and Sackenheim's

and Perry's misconceptions. Harley explained at the SHO hearing that she did not generate the certification letter until it was requested by claimants' counsel in June 2019. Perry stated in his December 6, 2019, letter to claimants' counsel that he did not learn that the October 17, 2018, certification letter was not actually generated on that date until after the filing of the claim. Sackenheim testified that when claimants' counsel asked for a copy of the written certification letter, she directed Harley to forward it. Sackenheim said that the letter was created as an administrative function by Harley, and she had no reason to question the date indicated on the letter; thus, that's why she stated in the memorandum contra that the date of certification was October 18, 2018. Sackenheim said she would not have been aware whether the letter was actually mailed because that was an administrative function. Furthermore, Sackenheim testified that, although the issue surrounding the creation and mailing of the certification letter first came to light after the June 2019 email exchange between Harley and claimants' counsel, she did not speak with Harley about the certification letter between June 2019 and the July 2019, DHO hearing because she had a cancer scare during that period, which included a biopsy, surgery, and follow-up appointments. Sackenheim testified before the SHO that she was unaware of the actual facts with regard to the certification letter until one week before the SHO hearing.

{¶ 52} Furthermore, both Sackenheim and Perry relied upon Harley's July 15, 2019, affidavit that Sackenheim attached to the memorandum in opposition to claimants' motion to dismiss. In the affidavit, Harley averred that she certified the claim, without specifying a date, but then referenced the attached letter dated October 17, 2018, leading Sackenheim and Perry to believe the certification date was on or about October 18, 2018.

{¶ 53} Also, the record is clear that it was not until preparing for the SHO hearing that Perry discovered the June 20, 2019, email exchange between Harley and claimants' counsel. In the email exchange, Harley told counsel that the BWC was told verbally on November 8, 2018, that OneSource was certifying the claim, and because BWC did not request a certification letter, she did not send a letter.

{¶ 54} Therefore, given the evidence and testimony included in the record, claimants' arguments with regard to the credibility of respondents' version of the events surrounding the creation of the certification letter are unpersuasive. Sackenheim and

Harley credibly explained the discrepancy between the two certification dates and the confusion relating to the certification letter.

{¶ 55} Turning to the central issue in this case, the SHO did not abuse his discretion in exercising continuing jurisdiction. Even in light of the error regarding the date of certification, the record contains some evidence to support the SHO's determination that continuing jurisdiction was appropriate based upon newly discovered evidence. At the SHO hearing, Harley and Sackenheim clarified that the claim was certified on November 6, 2018, and Harley confirmed the certification again with the BWC on November 8, 2018. However, regardless of whether October 18, November 6, 0r November 8, 2018, was the date of certification, the SHO's underlying findings still support continuing jurisdiction. Harley testified that the traffic crash report did not mention drugs or alcohol being a factor. She also testified that the hospital records from Miami Valley, which were available by November 6 or 8, 2018, did not reference cocaine or marijuana in the decedent's system, and did not reference any blood test, toxicology test, blood samples, or pending tests from either Miami Valley or the transferring hospital, Lima Memorial. Also, Harley testified that, before the claim was certified, she contacted Miami Valley on several occasions to ask if any drug tests were pending, and a hospital billing representative, Dianne, indicated she had looked through the records and had seen no such tests. She testified that she assumed Dianne had reviewed the Lima Memorial records. Furthermore, even if the Lima Memorial records had been obtained or reviewed, the urine screen included in them did not reference cocaine or marijuana. The Lima Memorial records also do not indicate that any drugs of abuse were discovered in any of the blood tests ordered.

{¶ 56} In addition, although a toxicology report was completed on November 6, 2018, it was attached to and part of the coroner's report, which was not released until December 11, 2018. There is nothing in the record to suggest that OneSource or any other member of the public could have accessed the toxicology report until the coroner's report was released. Harley testified that, as of November 6 and 8, 2018, she had no knowledge that there existed a toxicology report or that the coroner was in the process of producing a report.

{¶ 57} Therefore, as the SHO found, OneSource exercised due diligence in its attempts to obtain all relevant medical information concerning the incident prior to certifying benefits. Buttressing a finding of due diligence are the actions undertaken by OneSource preceding certification. Harley testified that OneSource hired a nurse case manager to assist in the handling of the claim and records collection, and the nurse case manager also searched the records and could find no drug tests pending. There was also evidence that Harley and Apex cooperated in their attempts to find out whether drug tests were completed at either hospital, but they were unable to find any.

{¶ 58} For the foregoing reasons, it is this magistrate's determination that there existed some evidence in the record to support the commission's exercise of continuing jurisdiction based upon new and changed circumstances occurring subsequent to the date of certification. The toxicology and coroner's reports constituted newly discovered evidence that, by due diligence, OneSource could not have discovered prior to the date of certification. This newly discovered evidence, when combined with the other medical evidence in the record, demonstrated that decedent's injuries and death were the result of intoxication and not sustained in the course of and arising out of his employment.

{¶ 59} Accordingly, it is the magistrate's decision and recommendation that this court should deny claimants' petition for writ of mandamus.


/S/ MAGISTRATE
THOMAS W. SCHOLL III


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).